WRIGHT v. WRIGHT et al.

(Circuit Court, W. D. Pennsylvania. June 23, 1900.)

No. 24.

1. JUDGMENTS—COLLATERAL ATTACK—PROCEEDINGS BEFORE AUDITOR.

A judgment entered on a warrant of attorney cannot be collaterally attacked by junior judgment creditors in a proceeding before a master appointed to distribute the proceeds of real estate on which the judgments were liens.

2. SAME—CONSIDERATION.

Where real estate is acquired by a widow and heirs, incumbered with the lien of an indebtedness owing by the ancestor at the time of his decease, and after such lien has expired by operation of law the widow and heirs execute to the creditor, under seal, a note containing a warrant of attorney for a confession of judgment for the full amount of the ancestor's indebtedness, payable 12 months after date, and containing a waiver of exemptions, a judgment duly entered on such note is not subject to attack as being without consideration, especially by the heirs who were parties to it.

3. EXEMPTIONS—WAIVER—EFFECT.
    In Pennsylvania the statutory exemption from execution is a personal
    privilege, which may be waived by the debtor, and where such waiver has
    been made in a judgment note the debtor cannot afterwards claim his
    exemption in proceedings before a master appointed to distribute the
    proceeds of real estate sold for the satisfaction of the judgment.

In Equity. Sur exceptions to master's report distributing proceeds of sale.

W. G. Guiler, for plaintiff.

R. H. Lindsay, for bank.

Albert York Smith, for other exceptants.

ACHESON, Circuit Judge. Creditors can attack a judgment collaterally only for collusion between the parties to it for the purpose of defrauding creditors. In re Dougherty's Estate, 9 Watts & S. 189; Lewis v. Rogers, 16 Pa. St. 18; Lennig's Appeal, 93 Pa. St. 301, 307. Where there has been no fraudulent collusion against creditors, it is an unbending rule that an auditor appointed to distribute money cannot inquire into a judgment rendered in court, but must take it as conclusive. Dyott's Appeal, 2 Watts & S. 557; Thompson's Appeal, 57 Pa. St. 175, 177; Lennig's Appeal, supra. The authority of these cases has not been shaken by any later ruling of the supreme court of Pennsylvania. A judgment entered on warrant of attorney is as much an act of the court as if it were formally pronounced on nil dicit or a cognovit, and until it is reversed or set aside it has all the qualities and conclusive effect of a judgment on a verdict. Braddee v. Brownfield, 4 Watts, 474; Lennig's Appeal, 93 Pa. St. 307. In Thompson's Appeal, supra, where a judgment entered on a warrant of attorney was collaterally attacked before an auditor by junior judgment creditors, Judge Strong, speaking for the supreme court of Pennsylvania, said:

"When the auditor entered upon the duties of his appointment, Thompson, the appellant, presented a judgment against Kelly, the defendant in the execution, for $6,000. It was apparently the first lien upon the property, which had been sold, and the proceeds of sale of which the auditor was directed to distribute. Of course, as a judgment it was conclusive upon the auditor. He had no right to disregard it, or to allow to any other lien a priority over it. Later judgment creditors, however, attempted to show that Kelly had intended to give a judgment only for $600, and that such sum had been paid. If the facts had been so, it would not have justified the auditor in treating it as anything else than a judgment for $6,000. He was concluded by the record. Dyott's Appeal, 2 Watts & S. 567; Leeds v. Bender, 6 Watts & S. 318; Ellmaker v. Insurance Co., Id. 442."

In the present case collusion between the bank and the defendants in its judgment to defraud the defendants' creditors was not shown, or even alleged. Fraudulent intent is not imputed to any of the parties to the bank's judgment. It is, indeed, a most curious fact that the plaintiff in each of the two junior judgments here claiming priority over the bank actually joined in executing the note with warrant of attorney for the confession of the judgment in favor of the bank. This fact precludes the notion of collusion on their part. There is a total lack of evidence of the collusion requisite under all the authorities to sustain a collateral attack upon the bank's judg-

ment. It was not even attempted to be shown that at the date the judgment note was given to the bank the makers were insolvent or at all embarrassed. The master's finding goes to the extent only that the bank's judgment "is without consideration, except the pre-existing debts of Thomas S. Wright, and that the judgment note or bond upon which it is entered is voluntary." But in Thompson's Appeal, supra, want of consideration, even when coupled with fraud upon the defendant in the confessed judgment, was held to be un-availing to junior judgment creditors in a collateral attack before an auditor upon a senior judgment.

The judgment having been given to the bank in good faith for the pre-existing debts of Thomas S. Wright, I am not able to see that its validity could be successfully questioned by these junior judgment creditors even in a direct proceeding before the proper tribunal. The facts are these: Thomas S. Wright died on November 7, 1893, seised, inter alia, of the real estate, the proceeds of sale of which the master was directed to distribute. At the time of his death Thomas S. Wright was indebted to the bank, and his real estate came to his widow and children incumbered with the lien of that indebtedness. The bank did not bring suit within the statutory period, and the lien expired. Subsequently, however, the widow, Nancy Wright, and five of the decedent's children, namely, Harry S., Moses, John A., William D., and Bessie Wright, all sui juris, executed under their hands and seals, and delivered to the bank, a note containing a warrant of at-torney for the confession of judgment for $8,815, the amount of Thomas S. Wright's indebtedness to the bank. This judgment note was dated January 21, 1897, and was payable 12 months after date, with interest from May 1, 1897, at the rate of 5 per cent. only, and it contained a waiver of exemptions. Judgment upon this note and warrant was entered in the state court on January 29, 1897. That judgment was the first lien on the real estate, the proceeds of the sale of which are here for distribution. The sale was made under a decree of this court discharging all liens. The two contesting junior judgments were entered in the state court by confession on March 28, 1898,—one in favor of Nancy Wright for $1,485, and the other in favor of Harry S. Wright for $1,716.91. By subsequent amendment the plaintiff in the latter judgment was styled, "Ad-ministrator of Thomas S. Wright, Deceased." Now, even aside from the fact that the note was under seal, there was, I think, ample con-sideration shown to support the bank's judgment. The debt due from the estate of Thomas S. Wright to the bank remained in full force, notwithstanding the lien therefor on the real estate had ex-pired. It was permissible to the widow and heirs of the decedent to waive the statutory limitation and revive the lien. Practically, this was done, to the extent of their interests by the widow and the children who gave their judgment note to the bank. In taking this note the bank gave time, and made concessions as to interest. This settlement being perfectly just in itself, and free from taint of bad faith, I do not perceive how it could be impeached even by third per-sons. Much less is it open to question by parties to the transaction. A very slight advantage to one party, or a trifling inconvenience to

the other, is sufficient consideration to support a contract. Harlan v. Harlan, 20 Pa. St. 303, 307. The resignation of even a mere colorable claim, and amicable settlement of the dispute, constitute a valid consideration. Paxson v. Hewson, 8 Wkly. Notes Cas. 197, 198. The compromise of an action based upon a manifestly groundless claim has been held enough to support a note for the payment of money. O'Keson v. Barclay, 2 Pen. & W. 531. There was also a sufficient moral consideration to sustain the judgment. The recognition by the widow and adult heirs that the land which came to them from the decedent continued justly chargeable in their hands with his honest debt was the dictate of good conscience. A debtor is not bound to interpose the bar of the statute of limitations in favor of creditors. Bergey's Appeal, 60 Pa. St. 408, 417. In Leonard v. Duffin, 94 Pa. St. 218, it was held that the debt of a married woman, which was legally void, and bound her morally only, was a sufficient consideration to support an obligation under seal by a third person to pay it. In Holden v. Banes, 140 Pa. St. 63, 21 Atl. 239, the court ruled that the contract of a married woman to pay a debt of her husband out of her separate estate created a moral obligation sufficient to support a bond and mortgage for the same debt executed by her after his death, and that, in the absence of fraud and collusion, other judgment creditors had no standing, on the distribution of the proceeds of the sale of the land, to set up the want of sufficient consideration for the bond and mortgage so executed.

The master, it seems to me, was right in refusing to postpone the bank's judgment to that of Nancy Wright, but wrong in giving priority over the bank to the judgment of Harry S. Wright, administrator. The cases upon which the master relied as his justification for giving priority to this junior judgment over that of the bank are inapplicable here. The bank was not before the master to enforce a note. It claimed under its judgment, which stood upon the record of the state court unimpeached and unquestioned, and the lien of which had been transferred from the land to the fund by the decree of this court. The master was concluded, as we have seen, by the record. But, even if the question of consideration had been open to him, the evidence was with the bank.

The master erred, I think, in allowing to Nancy Wright and Bessie Wright the exemptions they had respectively waived. In Pennsylvania it is conclusively settled that the statutory exemption is a personal privilege, and may be waived. Case v. Dunmore, 23 Pa. St. 93; Bowman v. Smiley, 31 Pa. St. 225. Here the waiver was in writing and under seal, and it had become part of the judgment. Clearly it was irrevocable. Id. In the case of Hoffman v. McDermond, 1 Pittsb. R. 197, cited by the master, the waiver was oral and without consideration.